# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2020

Lyle W. Cayce
Clerk

No. 19-30289

Derrick Dewayne Grant,

*Petitioner—Appellant*,

*versus*

Darrel Vannoy, Warden, Louisiana State Penitentiary,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:16-CV-77

Before Owen, *Chief Judge*, and Davis and Southwick, *Circuit Judges*.
Per Curiam:[*]

Derrick Grant was convicted in state court of attempted murder. In this *habeas* suit, he argues that the prosecutor violated his right to remain silent by suggesting at trial that his silence at the time of his arrest was evidence of guilt. Those facts also lead to a claim of ineffective assistance of

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-30289

trial counsel based on his counsel's the failure to object to the prosecutor's efforts. The district court denied relief. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Derrick Grant was convicted of attempted second-degree murder in Louisiana state court. *State v. Grant*, 105 So. 3d 81, 83 (La. Ct. App. 2d Cir. 2012). Our factual discussion is drawn largely from the Louisiana Court of Appeal's opinion on direct review of Grant's conviction. In October 2003, three men were playing dominoes on the front porch of a house in Shreveport, Louisiana. An SUV stopped in front of that house. One person remained in the SUV while two others exited the vehicle and began firing assault rifles at the house. One of the men on the porch was injured by the gunfire.

Across the street, an off-duty fireman heard the gunfire and observed two men outside a tan SUV shooting at a house. When the SUV sped away, the fireman called the police and followed the vehicle until officers caught up. Officer John Stratton was the first to reach the SUV and took over the chase. One or more of those in the SUV fired at Stratton's car while they sped down an interstate highway. Officer Stratton never lost sight of the SUV, which eventually stopped in a ditch. The three men in the vehicle then fled through a thicket of bamboo and a razor-wire fence, guns in hand.

Other officers arrived on the scene. A K-9 unit tracked the scent to a home where an assault rifle was discovered but no suspects. Then, the tracking led officers to a second house where three men – Grant, William Hall, and Ira Ross – were found. Officers saw that Grant had a fresh cut on his face. Grant gave permission for officers to make a protective sweep of the home. Another assault rifle was found under this house.

No. 19-30289

During the sweep, officers also discovered muddy clothes in the laundry and tennis shoes similarly covered in mud. At this point, officers arrested the three men and provided warnings of their constitutional rights, including the right to remain silent. The investigation revealed that the SUV involved in the shooting had been rented under Grant's girlfriend's name.

Hall and Ross were tried and convicted of attempted second-degree murder. After those convictions, Grant's jury trial was conducted in June 2006. He testified that he was not the third man involved in the shooting. Instead, the by-then-deceased Jackie Sanders committed the crime with Hall and Ross. Grant's testimony on direct examination was that Hall and Ross came to the house where Grant lived with his girlfriend and immediately asked where Sanders was. Grant testified that he allowed the two men to place their muddy clothes in the laundry and provided them with clean ones. Grant also stated that when the officers arrived at the home, he was trying to be helpful by allowing them to conduct the protective sweep.

On cross-examination, the prosecutor attempted to cast doubt on Grant's story with the following line of questions:

> Q. And with respect to this Jackie Sanders stuff going on, all that, the first time we're hearing about it is here at your trial, right?
>
> A. Yes, sir.
>
> Q. Okay. And I believe you said that, "How can you not tell the police" — you know, talking about when they're coming in. "How can you not tell them what's going on" in response to one of your questions to [defense counsel]; do you recall saying that?
>
> A. Yes, sir.
>
> Q. Well, how come you didn't tell the police about Jackie Sanders and all that at the time?

No. 19-30289

A.  Because I hadn't actually laid eyes on Jackie Sanders.  I mean, I wasn't going to tell the police that, "Hey, you got another guy next door."

Q.  Well, you didn't tell the police anything, did you?

A.  No, sir.  All I told them is that they can search the house.

These questions, Grant has argued in state and federal court, violated his rights because they commented on his silence after being informed that he had a right to be silent.

Grant has also argued that the state committed error in its closing arguments.  During the rebuttal portion of closing argument, the prosecution again attacked Grant's theory of the case.  The prosecutor said:

Who in the world would be most interested in getting to the bottom of it?  An innocent man.  An innocent man would stand before the police and go, "Look, I didn't have anything to do with it.  These guys just came in.  They just did a murder.  I don't want to be involved in this.  I don't want to do anything.  You know, y'all have arrested me.  Y'all have taken me to jail, accused me of killing somebody; but I'm going to be quiet about it.  I'll tell you what.  We'll come up with this whole defense and, you know, use the oldest defense in the world and blame it on the dead guy.  And I'm going to spring it on the jury the day of trial."  That's just stupid.  That's all that is.  And that's exactly what they've given you.

The jury found Grant guilty.  The court entered a judgment of conviction and sentenced him to life imprisonment as a recidivist.

Grant appealed.  Two of the issues that Grant argued mandated reversal of his conviction were (1) whether the prosecutor's arguments violated Grant's right to remain silent and (2) whether Grant's trial counsel was ineffective in failing to object.  The Louisiana Second Circuit Court of Appeal held there was no error because the prosecutor's arguments were

4

about Grant's pre-arrest silence. *Grant*, 105 So. 3d at 89. That court also held that the trial attorney's representation was neither ineffective nor prejudicial to Grant. *Id.* at 89–90. The Louisiana Supreme Court denied a writ of certiorari. *State v. Grant*, 110 So. 3d 1073 (La. 2013) (mem.).

Grant then sought a writ of *habeas corpus* in state district court. He presented five grounds for relief that did not include the claims made on direct appeal regarding his right to remain silent. He was denied relief in May 2014. Both the court of appeal in August 2014 and the supreme court in January 2016 denied his applications for further review.

The case we are deciding today started with an application under 28 U.S.C. § 2254, which Grant filed in the United States District Court for the Western District of Louisiana in January 2016. Among the claims were the ones presented on direct appeal from his conviction, namely, that the prosecutor's cross-examination and closing argument violated his constitutional right to remain silent and that his trial counsel was ineffective for not objecting.

A magistrate judge issued a report and recommendation that concluded the Section 2254 application should be denied. The district court accepted the magistrate's recommendations "with the exception of the findings regarding the prosecution's comments on [Grant's] post-arrest silence." The district court determined that neither the Louisiana court of appeal nor the magistrate judge had actually considered the second set of statements, those made during the prosecution's closing argument. The district court found that these comments did refer to Grant's post-arrest silence. The district court then held that the closing argument had violated Grant's rights, but he had failed to show the error was prejudicial.

The district court *sua sponte* granted a certificate of appealability ("COA"). In explaining the COA, the court stated that Grant "has made a

substantial showing of the denial of a constitutional right" regarding the references that the prosecution made during closing argument about his post-arrest silence. Grant appealed.

## DISCUSSION

Grant is a state prisoner who is seeking relief in federal court for alleged violations of federal law in his conviction. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we will grant relief when the state *habeas* proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

We highlight the standard for reviewing factual findings: "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for relief "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

Grant, proceeding *pro se*, seeks relief based on both the prosecution's questioning and its closing argument. Additionally, Grant maintains his ineffective-assistance-of-counsel claim on appeal. We proceed in two steps. First, we determine the scope of the COA and whether amending it is appropriate. Second, we analyze whether Grant is entitled to relief on the claims that we hold are encompassed by the COA.

## I.    *Certificate of appealability*

"[N]o automatic right to appeal a district court's denial or dismissal" of a Section 2254 application exists under the AEDPA. *Miller-El v. Cockrell*,

537 U.S. 322, 327 (2003). When a district court issues a final order under Section 2254, it may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(a), (c)(2). The COA "shall indicate which specific issue or issues satisfy the [required] showing." § 2253(c)(3).

The issuing of a COA is a jurisdictional requirement for this court to hear the appeal. *United States v. Smith*, 945 F.3d 860, 863 (5th Cir. 2019). The COA exists for Grant's appeal, so we have jurisdiction.

We next consider what has been encompassed within the COA, and whether Grant has shown any additional issues that satisfy the COA standard of a "substantial showing" that a constitutional right was denied. *See id.*

### A.    Scope of the current certificate of appealability

The district court agreed with the magistrate judge's "Report and Recommendation with the exception of the findings regarding the prosecution's comments on [Grant's] post-arrest silence." The district court concluded that the magistrate judge "only addressed the references that the prosecution made during cross-examination." Accordingly, the district court assessed whether the closing argument statements violated the rule that prosecutors may not impeach a defendant by using his silence after being given *Miranda* warnings. *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976). The district court concluded that the closing argument statements violated *Doyle* but then held that these statements "did not have a 'substantial and injurious effect or influence in determining the jury's verdict,'" quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Consequently, it concluded that the conviction should not be overturned. The COA the district court granted is limited to that claim, as it stated that Grant has "made a substantial showing of the denial of a constitutional right regarding the references that

the prosecution made during closing argument about his post-arrest silence." The court rejected the claim but found sufficient grounds to allow this appeal.

### B.     *Amending the certificate of appealability*

Grant's additional claims concerning the cross-examination questions and his ineffective assistance of counsel are not included within the COA. We examine whether we should amend the COA.

A COA should cover those issues for which the applicant for *habeas* relief "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Further, if the state court rejected the constitutional claim on the merits, the applicant must show "that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In determining the proper state-court decision to assess, we seek "the last explained state-court judgment" resolving the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  The Louisiana court of appeal's direct-appeal decision from the 2012 conviction provides that state-court judgment.

The Louisiana court of appeal clearly concluded (1) there was no ineffective assistance of counsel and (2) there was no *Doyle* violation for the cross-examination questions. *Grant*, 105 So. 3d at 87–89, 89–90.  We will discuss how the claim about the closing argument was addressed later.  The magistrate judge's recommendation was for a finding that these two issues were adjudicated on the merits in state court and that there was no error under the deferential AEDPA standard.  The district court adopted the magistrate's report and recommendation as to these two issues.  No COA was granted as to them.

Because those two issues were adjudicated on the merits, Grant must show that reasonable jurists would differ as to the state court's holding before we would consider enlarging the scope of the COA. *See Slack*, 529 U.S. at

484. We have quoted the challenged cross-examination questions. What is of particular importance is this portion: "And I believe you said that, 'How can you not tell the police' — you know, talking about when they're coming in. 'How can you not tell them what's going on' in response to one of your questions to [defense counsel]; do you recall saying that?" Grant had already said on direct examination that he had felt it necessary to tell police his version of events, including explaining the muddy clothes, the scratch on his face, and other matters. That helpful, good-citizen cooperation with police could be seen as occurring before Grant's arrest. It is in that context that the cross-examination inquiry was focused — why Grant had failed to mention so significant a matter as the escaped third shooter when he claimed he was trying to assist police in the investigation.

The court of appeal concluded that these "addressed a time period pre-arrest, when the defendant allowed them to come in for a protective sweep." *Grant*, 105 So. 3d at 89. We consider that to be a factual finding, as it results from the state court examining the record and analyzing the implications of the question. Any "determination of a factual issue made by a State court shall be presumed to be correct," and Grant needs "clear and convincing evidence" to rebut that presumption. 28 U.S.C. § 2254(e)(1). The fact finding is reasonable, and nothing before us rebuts it. Thus, a COA should not be granted as to issues arising from the cross-examination.

The other issue not within the COA is whether Grant's trial counsel was constitutionally ineffective for not objecting to the cross-examination or to the closing argument. The state court of appeal identified the argument as being that "his attorney did not object to all of these violations of his rights as they were occurring during trial." *Grant*, 105 So. 3d at 89. The "violations" included the *Doyle* issue regarding cross-examination, which could not amount to ineffective assistance because of the state court's decision that the questioning was not in violation of *Doyle*. That is what the

state court concluded, and that conclusion would be sustained even if the deferential review standards of the AEDPA did not apply.

There is no reason to expand the COA to include the issue of ineffective assistance of trial counsel for failure to object to proper cross-examination.  That leaves the question of expanding the COA to cover the claim of trial-counsel ineffectiveness for failure to object to closing argument. We do not see, and the district court was equally unseeing, that the state court of appeal discussed that part of the claim.  We will need to discuss how the AEDPA guides our consideration of claims not explicitly addressed by the state court.  That consideration applies both to the claim about the prosecutor's closing argument, which is covered by the COA, and about defense counsel's failure to object to it, which is beyond the COA.  Our analysis of both will be considered together.

## II.    *Claims concerning closing argument*

We earlier quoted a lengthy portion of the closing argument.  The prosecutor referred to the defense theory at trial that the now-deceased Sanders was the actual third person in the SUV.  Some of the closing argument could be seen as making nothing more than the same point we have already accepted as being pre-arrest silence, but there is one part of the argument that goes beyond.  The prosecutor made one clear reference to post-arrest silence by suggesting that the following is what Grant effectively was saying: "You know, y'all have arrested me.  Y'all have taken me to jail, accused me of killing somebody; but I'm going to be quiet about it."

The reasoned decision by the Louisiana court of appeal did not specifically address the closing-argument claims, either as to the argument itself or counsel's failure to object.  The court reviewed Grant's *Doyle* argument generally, but the court's only quote from the closing argument was this: that is "'the oldest defense in the world . . . blame it on the dead

guy.   And I'm going to spring it on the jury on the day of trial.'   The
prosecutor said, 'That's just stupid.  That's all that it is.  And that's exactly
what they've given you.'" *Grant*, 105 So. 3d at 87.  The part of the argument
where the prosecutor hypothesizes about what Grant was in effect saying
after his arrest was not quoted by the state court of appeal.

We have guidance on what to do when we need to read between the
lines of state court opinions.  A rebuttable presumption exists that claims
presented to a state court have been adjudicated on the merits when relief is
denied; the presumption applies to unreasoned decisions and decisions that
address only some claims and omit references to others.  *Johnson v. Williams*,
568 U.S. 289, 293 (2013).  The important question for us is not what the state
court did not say, but what the applicant for relief did say to that court.

Grant's briefing on direct appeal first discussed at some length the
claims we already resolved about cross-examination.  That brief said: "The
prosecutor concluded this assault on the defendant's post-arrest silence in
his closing argument."  The brief then quoted the entirety of what we quoted
in this opinion about closing argument.  Later, under the issue of trial
counsel's ineffectiveness, the brief to the court of appeal stated: "Defense
counsel failed to even object to the prosecutor's impeachment of Mr. Grant's
post-arrest silence or his closing argument referencing same."

The issue, both as to the closing argument itself and as to counsel's
silence as the argument was delivered, was presented to the state court.  We
conclude that the presumption arises that the state court resolved both on the
merits.  Grant has the burden of rebutting it.  *Hoffman v. Cain*, 752 F.3d 430,
439 (5th Cir. 2014).  Rebuttal involves addressing these questions:

> (1) what the state courts have done in similar cases; (2) whether
> the history of the case suggests that the state court was aware
> of any ground for not adjudicating the case on the merits; and

(3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.

*Woodfox v. Cain,* 772 F.3d 358, 371 (5th Cir. 2014).

Though Grant is proceeding *pro se*, and we liberally construe such briefing, he "must still brief the issues" to preserve his arguments. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). On the other hand, when the state does not argue that an issue was decided on the merits, there at least is no argument about a presumption to be rebutted. Nonetheless, we conclude there is no justification for rejecting the presumption that the claim was resolved on the merits. The claim was before the state court and is not easily differentiated from what that court did reject as grounds for reversal.

We conclude that the claims about closing argument were resolved on the merits. We now examine whether the resolution satisfies deferential review. The extent of the Louisiana Second Circuit Court of Appeal's explanation is that Grant "put Jackie Sanders and his alleged role in the instant crime at issue in his opening statement, during his questioning of state witnesses, and in his own testimony on direct examination by defense counsel." *Grant*, 105 So. 3d at 88–89. Of course, even if Grant injected the theory of a then-deceased perpetrator into the trial, the state still could not use Grant's post-arrest silence about Sanders against him. The court of appeal discussed *Doyle* and made a factual finding that the cross-examination questions "addressed a time period pre-arrest." *Id.* at 89. We have already held that our review under the AEDPA requires us to deny relief as to that.

We hold on, analytically, to that part of the state court's opinion as we move to the unaddressed arguments that were before the state court. The state court accurately commented that "*Doyle* error is subject to a harmless error review. The harmless error inquiry is whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* at

88 (quotation marks omitted).  We have already upheld the state court decision that the cross-examination was not a violation of *Doyle*.  That questioning validly stressed for jurors that Grant had passed up pre-arrest opportunities to mention an elusive third culprit.  Consequently, we see no prejudice when the prosecutor expanded the rhetorical net in one sentence of his closing argument, suggesting that the unbelievability of Grant's silence also applied as he was being taken to jail.

Implicitly, the Louisiana court of appeal was holding that the closing argument did not prejudice Grant.  In so holding, the court did not reach "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," nor one "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

We do not expand the COA.  As to the issue on which a COA was granted, we AFFIRM.